**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 11:27 AM July 19, 2012**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| PENNY JEAN MCFADDEN, | ) | CASE NO. 12-60420 |
| | ) | |
| Debtor. | ) | JUDGE RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | |
| | ) | |

Now before the court are two motions. Pro se creditor Michael E. Riggle ("Mr. Riggle" or "Creditor") filed a "Motion Objecting to Discharge Request Dismissal of Debtor's Petition" (sic) ("Motion") on May 4, 2012. He filed a supplement to the motion on July 16, 2012. On June 3, 2012, Debtor filed a motion to deny or dismiss Mr. Riggle's motion, which the court deems to be a responsive pleading ("Response"). The court conducted a hearing on June 11, 2012 and took the matter under advisement.

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984, now superseded by General Order 2012-7 dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

1

# BACKGROUND

Debtor was a past tenant in a property owned by Mr. Riggle. It's obvious the parties' relationship did not end well. Ultimately, Mr. Riggle sued her and began the process of executing on the judgment. Soon after, Debtor filed a chapter 7 bankruptcy petition. Mr. Riggle participated in the 341 meeting of creditors conducted by the chapter 7 trustee, Anthony J. DeGirolamo, on April 10, 2012.

# DISCUSSION

## I. Requirements for pro se pleadings

This case squarely highlights the conundrum a court often faces when pro se litigants file pleadings. In this case, Mr. Riggle filed a motion that is completely devoid of any reference to the bankruptcy code or rules, nor does it contain any citation to any legal authority. This is not uncommon with pro se parties. *See, e.g.,* Zielinska v. Smith (In re Smith), 469 B.R. 147 (Bankr. D. Conn. 2012) (involving a "complaint [that] fails to cite to a statutory basis for its relief requested, and in its form and substance is not a model of clarity"); In re Rosillo, 2007 WL 2230765 (Bankr. S.D.N.Y. 2007) (noting the absence of any authority in the pro se debtor's motion to reopen). Instead of making legal arguments, Mr. Riggle presents numerous allegations which appear designed to disparage Debtor's character and highlight inaccuracies in the schedules.

It is clear, by Supreme Court dictate, that the pleading standards for pro se litigants is "less stringent . . . than formal pleadings drafted by lawyers" and pro se pleadings are entitled to liberal construction. Haines v. Kerner, 404 U.S. 519, 520 (1972); Martin v. Overton, 391 F.3d 710, 712 (6th Cir. 2004). The dilemma for courts is created by the absence of a specific standard or direct guidance in application of the principle of construing a pro se pleading liberally. *See, e.g.,* Patricia Hatamyar Moore, An Updated Quantitative Study of Iqbal's Impact on 12(b)(6) Motions, 46 U. Rich. L. Rev. 603, 639-40 (2012); Rory K. Schneider, Illiberal Construction of Pro Se Pleadings, 159 U. of Pa. L.Rev. 585 (2011). As a result, courts deal with pro se pleadings on an ad hoc basis, often with varying results. *See* id.

While no defined standard was articulated, it is apparent that most courts recognize that liberality is not untempered. For example, a liberal interpretation does not "require lenient treatment of substantive law . . . even a pro se plaintiff must state and support all elements of a substantive claim to avoid an adverse judgment." Durante v. Fairlane Towne Ctr., 201 F.Appx. 338, 344 (6th Cir. 2006); *see also* Morris v. Equi First Corp., 2010 WL 890877, * 3 (M.D. Tenn. 2010) (unpublished). And a court is not compelled to "excuse mistakes by those who proceed without counsel." Eglinton v. Loyer (In re G.A.D., Inc.), 340 F.3d 331, 335 (6th Cir. 2003) (citing McNeil v. U.S., 508 U.S. 106, 113 (1993)). Basic pleading standards apply:

> Neither [the Supreme Court] nor other courts, however, have been willing to abrogate basic pleading essentials in pro se suits.

2

> *See, e.g.*, id. at 521, 92 S.Ct. at 596 (holding petitioner to standards
> of Conley v. Gibson ); Merritt v. Faulkner, 697 F.2d 761 (7th Cir.)
> (duty to be less stringent with pro se complaint does not require court
> to conjure up unplead (sic) allegations), *cert. denied*, 464 U.S. 986,
> 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); McDonald v. Hall, 610 F.2d 16
> (1st Cir.1979) (same); Jarrell v. Tisch, 656 F.Supp. 237 (D.D.C.1987)
> ( pro se plaintiffs should plead with requisite specificity so as to give
> defendants notice); Holsey v. Collins, 90 F.R.D. 122 (D.Md.1981)
> (even pro se litigants must meet some minimum standards).

Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989).

Requiring a pro se litigant to meet basic pleading standards protects an opposing party from the unknown. Without some restraint on what is acceptable from a pro se party, an opposing party can be forced to guess at the pro se's position and raise defenses in the dark. This does not meet any notion of due process, fair play or justice. The provision of notice to the opposing party is a hallmark of basic pleading.

While liberal construction of a pro se pleading may require "active interpretation," Franklin v. Rose, 765 F.2d 82, 85 (6th Cir. 1985) (citation omitted), it is beyond the scope of this court's duties to create claims or make legal arguments for a pro se litigant. Crawford v. Crestar Foods, 2000 WL 377349 (6th Cir. 2000) (unpublished) (citing Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985)). "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a *pro se* plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Beaudett at 1278 (citing Gordon v. Leeke, 547 F.2d 1147, 1151, *cert. denied*, 439 U.S. 90 (1978)). Thus, the challenge is finding the balance between interpretation and creation.

In this case, the court finds that the balance would have to be tipped severely in favor of creationism for the motion to be granted. Mr. Riggle failed to meet even a minimum standard of pleading. He does not cite one single bankruptcy code provision, bankruptcy or civil rule, or provide any legal authority. Basic pleading standards require "hanging the legal hat on the correct peg" to avoid forcing a court to conjure claims for a pro se party. Martin v. Overton, 391 F.3d 710, 714 (citing Erwin v. Edwards, 22 Fed.Appx. 579, 580 (6th Cir. 2001)). Anything more requires the court to read Mr. Riggle's motion, take his factual assertions, and mold them into a plausible legal argument. This is beyond the purview of the court's judicial role and can result in subversion of the court's neutrality. *See* Hon. Robert Bacharach and Lyn Entzeroth, Judicial Advocacy in Pro Se Litigation: A Return to Neutrality, 42 Ind. L. Rev. 19 (2009).

Much of Mr. Riggle's motion is a devoted attempt to convince the court that Debtor is a bad person. Every creditor that comes before this court could complain about the character of the debtor. The court is an arbiter of legality, not morality, except to the extent that the issue relates to any of several morally related provisions of the bankruptcy code. Saying that a debtor is a bad

3

person, without any underlying legal foundation providing context for the assertion, calls upon the court to judge the character of the debtor or to identify the law governing the facts. Both are beyond the scope of a court's power.

The court finds that Creditor's motion is legally insufficient and therefore must be denied. Independently, the court finds that even if the court exceeds its mandate and provides a legal construction that the motion fails.

II.     **The motion**

Mr. Riggle titled his pleading "Motion Objecting to Discharge Request Dismissal of Debtor's Petition." The title alone is indicative of the challenge presented to the court because it could be read to request relief under multiple legal theories.

If the court focuses on the "objecting to discharge" language in the title, it would suggest that it is an action to either deny debtor's discharge under 11 U.S.C. § 727 or except the debt from discharge under 11 U.S.C. § 523. Actions under sections 523 and 727 must be initiated with the filing of a complaint, not a motion. Fed.R.Bankr.Pro. 7001(4) and (6). If Mr. Riggle's intent was to object to discharge, he failed to use the proper procedural mechanism.[1] The Sixth Circuit supports a pro se litigant's adherence to 'straightforward procedural requirements that a layperson can comprehend as easily as a lawyer.' Kirkland v. Fid. and Deposit Co. of Md. (In re Micro-Time Mgmt. Sys., Inc.), 1999 WL 71595, * 4 (6th Cir. 1999) (citing Jourdan v. Jabe, 951 F.2d 108, 109 (6th Cir. 1991)). Consequently, Mr. Riggle's failure to file a complaint is procedurally fatal.

After combing through the motion, the court finds no specific requests related to discharge and can find only one other mention of discharge. On page four, Mr. Riggle states "[Debtor's false representations] were willful acts of deception made to deceive the court and her creditors in order to get her debt discharged." (Motion, p. 4). Use of this language could lead the court down a § 523(a)(2) path, where debts can be excepted from discharge based on fraudulent misrepresentations, or § 523(a)(6) path, excepting from discharge debts incurred willfully and maliciously. This strains plausibility, however, because at no point does Mr. Riggle request any relief specific to discharge of his debt. Therefore, the court questions whether the pleading seeks nondischargeability of Mr. Riggle's debt. Moreover, the deadline for filing a complaint objecting to discharge or dischargeability has expired. Similarly, if Mr. Riggle intended to object to discharge under § 727, specifically § 727(a)(4), it is not stated. The court will not elevate three words in the title of the pleading over the substance of the motion. Selection from among these four choices, and there could be others, is a bridge too far for the court and a legal and fee trap for opposing counsel and Debtor.

---

[1] The court has the impression that Mr. Riggle was disturbed by the chapter 7 trustee's advice to obtain bankruptcy counsel. Mr. Riggle is absolutely correct that he has the right to represent himself, but that doesn't mean doing so is in his best interest. His misstep here, as well as his other instances of unfamiliarity with the bankruptcy system, demonstrate the inherent danger of pro se advocacy.

4

The confusion an inartful pleading creates is apparent from Debtor's Response. Unlike the court, Debtor has interpreted the motion to seek nondischargeability or denial of discharge. As Debtor points out, she has no idea of the legal basis for the motion and therefore is unable to determine how to defend the Motion. Debtor would need to be able to read the court's mind to ascertain its interpretation of the motion in order to adequately respond. Otherwise, Debtor is forced to attempt to counter every conceivable argument that could be raised, even those which were never intended to be pursued. This increases fees for a debtor and unnecessarily expends resources, including time.

Another option is to treat the motion as a motion to dismiss under 11 U.S.C. § 707. On page four of the Motion, Mr. Riggle states "I am asking the court to dismiss McFadden's bankruptcy petition based on the debtor's **many willful false representations** on her petition." (emphasis original) (Motion, p. 4). As movant, Mr. Riggle bears the burden of proof on § 707(a) and (b) motions to dismiss. Simon v. Amir (In re Amir), 436 B.R. 1 (B.A.P. 6th Cir. 2010); In re Hoke, 447 B.R. 835 (Bankr. N.D. Ohio 2011) (citation omitted). A court's decision on either a 707(a) or 707(b) motion to dismiss is based in equity. Indus. Ins. Serv., Inc. v. Zick (In re Zick), 931 F.2d 1124; Behlke v. Eisen (In re Behlke), 358 F.3d 429 (6th Cir. 2004).

Section 707 dismissals are premised on two foundations: cause under 707(a) and abuse under 707(b). Section 707(a) states:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days of such additional time as the court may allow after the filing of the petition commencing the case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

Cause is not limited to proof of one of the three enumerated examples set forth above. In re Zick, 931 F.2d 1124. Rather, cause can take on various forms, including bad faith. Id. The possibilities of grounds for cause are endless.

Section 707(b) authorizes a court to dismiss a case "if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). A presumption of abuse exists if a debtor's income less allowable expenses exceeds the amount designated by the

5

statute.  Accurate completion of Form B22A will determine if the presumption arises.  In this case, Debtor indicates the presumption does not arise.  However, Mr. Riggle does challenge Debtor's income figures, so it is conceivable that his argument would also implicate § 707(b)(2). Other grounds for a finding of abuse are set forth in § 707(b)(3), directing a court to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances."

Since Mr. Riggle has not specifically identified the statututory foundation for dismissal, allowing him to proceed would compel the court to create an argument for him from the facts alleged.  Even if the court found this to be an acceptable exercise of its authority, the court doesn't believe Mr. Riggle would win.  His arguments could be capsulized into two categories:  (1) issues with the chapter 7 trustee and (2) alleged misrepresentations in Debtor's petition.  The court finds Creditor has not advanced viable legal arguments supporting dismissal on either basis.

### A. The 341 meeting

Mr. Riggle does not deny that he attended the 341 meeting and was allowed to question the Debtor.  He takes issue with the chapter 7 trustee's limitation on the number of questions he was permitted to ask and the manner in which the trustee conducted the 341 meeting.  He believes that the chapter 7 trustee merely "rubber stamped" Debtor's petition without due investigation.

Meetings under § 341 are within the authority of the United States Trustee.  11 U.S.C. § 341(a).  The court cannot preside over or attend 341 meetings by statutory mandate.  11 U.S.C. § 341(c).  The meetings are administrative in nature, not adjudicatory.  In re Clemmons, 151 B.R. 860 (Bankr. M.D. Tenn. 1993) (citations omitted).  Their purpose 'is to enable creditors and the trustee to determine if assets have improperly been disposed of or concealed or if there are grounds for objection to discharge.'  U.S. v. Cunningham (In re Cunningham), 1988 WL 148642 * 2 (D.S.D. 1988) (citing S.Rep. No. 989, 95th Cong., 2d Sess. 43 (1978)); *see also* Krasny v. Nam (In re Nam), 245 B.R. 216 (Bankr. E.D. Penn. 2000) (citations omitted).  In this regard, a creditor's examination of the debtor is not unfettered.  "[I]f the debtor believes that the questions are beyond the scope permitted, or unduly repetitious, the debtor may object and even refuse to answer."  3 Collier on Bankruptcy ¶ 341.02[5][e], 341-13 (16th ed. 2011).

The chapter 7 panel trustee operates within time constraints in conducting 341 meetings. To allay any prejudice this may cause, a creditor has the option of a Rule 2004 examination. Fed.R.Bankr. Pro. 2004.  "A 2004 examination serves as a continuation of the § 341 meeting, which is moderated by the U.S. trustee, when one or more creditors seek information that goes beyond the scope of a § 341, given the flexible constraints of the U.S. Trustee's 341 calendar."  In re Tawflik, 2011 WL 873444 (Bankr. N.D. Ga. 2011).  Mr. Riggle had a tool, a 2004 examination, available for further inquiry of the debtor if circumstances warranted.

Regardless, any issues he has with the manner in which the 341 meeting was conducted are properly directed at the United States Trustee or the chapter 7 panel trustee.  Mr. Riggle's complaints complaints regarding the 341 meeting do not inculpate Debtor and therefore cannot serve as grounds to dismiss Debtor's case.  Moreover, the court has extremely limited authority

with regard to 341 meetings.

   Similarly, contrary to Mr. Riggle's understanding, the court does not conduct investigations. In the bankruptcy arena, the trustee, a component of the United States Department of Justice, is tasked with the investigation of debtors. 11 U.S.C. § 704(a)(4). Referrals of misconduct by debtors may also be investigated and prosecuted by a United States Attorney. 18 U.S.C. § 3057. Basic government teaches that the judiciary is the branch of government charged with interpreting the law, not making or enforcing it, which are powers left to the executive and legislative branches. Usurpation of powers held by the other branches of government upsets the balance of power in our tripartite system. "There is no liberty if the power of judging be not separated from the legislative and executive powers." Stern v. Marshall, 131 S.Ct. 2594, 2608-09 (quoting The Federal No. 78, p. 466 (C. Rossiter ed. 1961) (A. Hamilton) (quoting 1 Montesquieu, Spirit of Laws 181)). The court interprets the law by deciding legal disputes presented to it. It does not engage in independent investigations of bankrupt debtors, nor does it have the funding or resources to do so.

### B. Alleged Misrepresentations

   Mr. Riggle contends that Debtor's petition should be dismissed because she made several misrepresentations in her petition and schedules. The alleged misrepresentations include misstating her address, the amount of debt she owes, her employment, and her income. He also challenges certain expenses, including expenses related to a vehicle and her phone expense. These statements may suggest that Mr. Riggle is challenging Debtor's good faith in filing the petition, specifically her lack of honesty. This could raise the question of whether Debtor's filing constitutes abuse under 11 U.S.C. § 707(b)(3). They also could be intended to establish cause under § 707(a) under the rubric of bad faith. The court does not know which provision applies, if any, and neither does Debtor.

   Regardless of the provision, Creditor faces an uphill battle that he is unlikely to win. First, he carries the burden of proof for dismissal, by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 498 U.S. 279 (1991); Sicherman v. Warner (In re Warner), 2011 WL 6140856 (Bankr. N.D. Ohio 2011). Second, the determination of § 707 motions to dismiss is equitable and therefore within the court's discretion. In re Behlke, 358 F.3d 429; In re Zick, 931 F.2d 1124.

   Section 707 dismissals are not intended to hammer a debtor for being a bad person. Rather, they are reserved for cases where debtors are trying to undermine the integrity of the bankruptcy system. As a result, situations supporting a § 707(a) dismissal are the exception, not the rule:

> Dismissal based on lack of good faith must be undertaken on an *ad hoc* basis. [In re Brown, 88 B.R. at 284](#). It should be confined carefully and is generally utilized only in those egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expen-

ditures, lavish lifestyle, and intention to avoid a large single
debt based on conduct akin to fraud, misconduct, or gross
negligence.

Zick, 931 F.2d at 1129.

Section 707(b)(3) dismissals are similarly focused on situations that are substantial abuses of the system:

> In essence, § 707(b) allows a bankruptcy court to deal
> equitably with the unusual situation where an unscrupu-
> lous debtor seeks to enlist the court's assistance in a
> scheme to take unfair advantage of his creditors; it serves
> notice upon those tempted by unprincipled accumulation
> of consumer debt that they will be held to at least a rudi-
> mentary standard of fair play and honorable dealing.
>
> \*   \*   \*
>
> Those courts which have reviewed the legislative history,
> have generally concluded that, in seeking to curb "substan-
> tial abuse," Congress meant to deny Chapter 7 relief to the
> dishonest or non-needy debtor. *See* Walton, 866 F.2d at 983.
> In determining whether to apply § 707(b) to an individual
> debtor , then, a court should ascertain from the totality of the cir-
> cumstances whether he is merely seeking an advantage over
> his creditors, or instead is "honest," in the sense that his rela-
> tionship with his creditors has been marked by essentially
> honorable and undeceptive dealings, and whether he is "needy"
> in the sense that his financial predicament warrants the discharge
> of his debts in exchange for liquidation of his assets.   *See* 4 Collier
> on Bankruptcy ¶ 707.07, at 707-20 (15th ed. 1989).   Substantial
> abuse can be predicated upon either lack of honesty or want of
> need.

In re Krohn, 886 F.2d 123, 126 (6th Cir. 1989).   Honesty may be reflected in more than simply the debtor's schedules:

> It is not possible, of course, to list all the facts that may be rele-
> vant to ascertaining a debtor's honesty.   Counted among them,
> however, would surely be the debtor's good faith and candor in
> filing schedules and other documents, whether he has engaged in
> 'eve of bankruptcy purchases,' and whether he was forced into
> Chapter 7 be unforeseen or catastrophic events.

8

<u>Id</u>. The court reviews the totality of the circumstances, not just the bad facts, to determine whether to dismiss a case for abuse. Not every situation where a debtor did something wrong warrants dismissal. Given the high hurdle, and after reviewing Mr. Riggle's motion, the court has no reason to believe he would succeed on a motion to dismiss, even were the court to pick an appropriate section.

For example, Mr. Riggle takes great offense in the fact Debtor is driving a car that is not titled to her. Debtor deducts expenses for a car on Schedule J but lists no ownership of a car on Schedule B. Mr. Riggle suggests that the car is titled to a friend or relative. Accepting this as absolutely true, Mr. Riggle has identified no reason this is problematic. Often, debtors are unable to obtain credit to purchase a vehicle and are relying on the goodness of a friend or a family member for transportation needs. There is nothing inherently wrong in this type of arrangement.

The court, and trustee, would be concerned if it appeared that debtor previously owned the vehicle and then transferred to another person, especially if the transfer was made immediately before the bankruptcy was filed and for little or no consideration. Also troubling would be an inability to prove that a debtor is making the monthly payments listed on Schedule J, thereby inflating her expenses. Mr. Riggle has not raised either of these arguments, nor does he claim she has a registered vehicle in her name which she failed to disclose.

A review of the vehicle expenses demonstrates that they are not unreasonable. They are well within the allowable standards that Debtor is entitled to take on the means test. The court therefore concludes that nothing about these expenses tends in favor of dismissal.

Creditor also suggests that Debtor misstated her income on Schedule I. The court does not agree with Mr. Riggle's assessment of her income. Debtor's employee income records contain pay advices from Granite Property Management Co., for the period from November 22, 2011 through February 15, 2012, and Angel's Private Duty Home Health Care, for the pay period January 29, 2012 to February 11, 2012. The latter pay stub was for a total of four hours.[2]

Based on the pay stubs, Debtor is paid twice each month. Her it average gross income per pay period from Granite is $1,060.00, or $2,120.00 per month. Her average net pay is $888.37, for a total of $1,777.74 per month. She lists her net income on Schedule I as $1,615.60. Consequently, her income is underreported by $162.14, not including any income from Angel's Private Duty Home Health Care. Her income, even at $1,777.74 per month, does not cover her listed expenses of $1,813.00 from Schedule J.

Mr. Riggle's calculations include income only from 2012, representing the two highest pay from all the pay stubs provided. The average of all the pay stubs provides a more accurate review of her earnings. The court is not convinced that she nets $2,226.00[3] per month, the amount

---

[2] Her net earnings were $33.61.
[3] Earlier in the opinion, the court referenced § 707(b)(2). Even if Mr. Riggle's higher income figure were correct, Debtor remains well below the median income for her family size, defeating a presumption of abuse.

9

propounded by Mr. Riggle. Based on these figures, Debtor's figure is more accurate than Mr. Riggle's.

Additionally, Mr. Riggle also takes issue with her $200.00 cell phone expense. The court agrees that, in a vacuum, this figure seems excessive. However, the court notes that this would be the single excess in Debtor's budget. The entire budget for she and her daughter is $1,813.00. She has no expenses for some typical expenses, including water and sewer, internet, cable, trash, recreation, medical or dental expenses, or rental insurance. The court also recognizes that Debtor has a fourteen year old daughter, so the cell phone expense may include a family plan.

Debtor is well below the national standards for the bulk of the budgeted items. The following are the means-testing standards for a two person household compared to Debtor's itemized expenses:

|  | Standard | Debtor |
| --- | --- | --- |
| Food | $537.00 | $400.00 |
| Housekeeping supplies | 66.00 | 0.00 |
| Apparel and services | 162.00 | 80.00 |
| Personal care products and services | 55.00 | 0.00 |
| Miscellaneous | 165.00 | 0.00 |
| Non-mortgage (utilities) | 503.00 | 50.00 |
| Mortgage/Rent | 789.00 | 589.00 |
| Vehicle operating expenses | 212.00 | 250.00 |
| Vehicle ownership costs | 496.00 | 244.00 |
|  | $2,985.00 | $1,613.00 |

The cell phone expense could easily be lumped in the utility category without reaching the standard. This is not a situation where the budget is "fat" and Debtor is over-spending across the board. Even with the additional income recognized by the court, Debtor's income exceeds her expenses. As a result, the court finds no abuse in the expenses itemized by Debtor.

Basically, Mr. Riggle has advanced a series of facts which present his view of Debtor's shortcomings with little attention to their application to a legal theory under the bankruptcy code. There is evidence of continuing acrimony in the parties' relationship.[4] Mr. Riggle focused exclusively on information in Debtor's petition and failed to examine the totality of the circumstances, including the reason(s) behind Debtor's bankruptcy filing, whether she engaged in "eve of bankruptcy" purchases, and her prepetition dealings with creditors.

Documents attached to Mr. Riggle's motion demonstrate that Debtor was addressing the debt owed him immediately before she filed bankruptcy. According to Exhibit 3, Debtor was paying $50.00 per month toward the debt since the 2008 judgment. The balance had been reduced from its original $3,000.00 to $1,895.04. Her last payment was made in January 2012.

---

4 This appears unabated. Mr. Riggle has a great deal of information about Debtor, including the VIN number from her car. He most recent filing indicates he continues to update himself about her actions.

According to debtor, she filed bankruptcy to avoid execution on Mr. Riggle's judgment and, potentially, garnishment.

Even if Mr. Riggle had advanced a viable legal theory in his motion, the court is not convinced of the likelihood of success. He has not provided any legal context for his allegations that suggests he can meet the high standard of proof required for dismissal.

## CONCLUSION

Even though a pro se litigant is not held to the same standard as an attorney, a pro se pleading must meet basic pleading requirements and demonstrate the basis for relief in order to provide notice to the opposing party. The court is not tasked with creating claims and arguments for pro se parties. In this case, that is what would be required of the court. Mr. Riggle's arguments could be melded into several plausible legal theories, including dismissal under § 707(a) or (b); denial of discharge under § 727(a)(4), or nondischargeability under § 523(a)(2) or (6). The court cannot accept this role. Further, it severely disadvantages Debtor's ability to defend herself.

Even if it were to construct a legal framework for his allegations, Mr. Riggle has not followed the proper procedure to object to discharge. He did not file a complaint and follow the procedures set forth in Rule 7001. Any request related to dischargeability therefore fails. Similarly, the court finds he has not set forth arguments articulating any identifiable dismissal theory or demonstrating a likelihood of success on any conceivable motion to dismiss. Consequently, Mr. Riggle's motion is not well-taken and is denied.

An order will be entered immediately.

# # #

**Service List:**

Anthony J DeGirolamo
116 Cleveland Ave., N.W.
Suite 307
Canton, OH 44702

Thomas Karl Mast
111 South Buckeye Street
Suite 240
Wooster, OH 44691

Michael E. Riggle
181 Cannon Drive
Wooster, OH 44691

11